Case number 23-3840, United States of America versus Alexander Sittenfeld. Arguments not to exceed 15 minutes per side. Mr. Roth, you may proceed for the appellant. May it please the court, Yaakov Roth on behalf of P.G. Sittenfeld. And I've asked to reserve two minutes for rebuttal. Very well. Your honors, I'm aware that it's not every day that a court of appeals overturns a criminal conviction on sufficiency grounds. But it's also not every day that former attorneys general, White House counsel, U.S. attorneys, and even public integrity prosecutors from across parties and administrations go to the trouble of filing amicus briefs on behalf of a convicted criminal defendant to tell this court that something has gone wrong. They're doing that here because of the implications of this prosecution. If we don't take the McCormick standard seriously, there's a real danger of exposing every elected official in the nation to potential prosecution. Because all campaign contributions are, to some extent, based on what an official has done or will do in office. Now, I want to be clear, I'm not saying that campaign contributions cannot be bribes. But it has to be a high bar. And I'd like to... Is that a... The one thing that confuses me a little bit about your argument, I suppose, is it's a sufficiency of the evidence case. But you say it's a high bar. Is that something that wasn't instructed correctly? Because you're not challenging the jury instructions. So the district court takes McCormick, Evans, Terry, Blanford, all these cases, puts together instructions that nobody objects to on this point. And it gives them to the jury. There is no high bar, low bar. How do we enforce the high bar through a sufficiency challenge? Yeah, absolutely, Your Honor. We're not challenging the instructions. The instructions were appropriate on this point. But the court always reviews the sufficiency of the evidence to make sure that a reasonable jury could have found the legal standard satisfied by the person in effect. So you repeatedly use explicit, which comes from McCormick. And sometimes, I think the amici do this too. They suggest it's an explicit quid pro quo at some times. And then at other times, they suggest there must be explicit evidence of a quid pro quo. Now, one, the first, it seems to me, is about the substantive test. So it's about what does the Hobbs Act or what does Section 666 mean? The second is about what does Rule 29 mean? What does Jackson mean? So I guess I have two questions for you. The first is, is it solely about what Jackson means and you want us to change the normal sufficiency of the evidence test in this context? Or is it about what the substantive standard is? I think it's about the substantive standard. But the substantive standard, of course, filters through to the sufficiency analysis because the court has to ask, could a reasonable jury from this record have found this high legal standard to be satisfied? So you would disclaim any idea that you need explicit evidence there, right? I think you need sufficient evidence of an explicit quid pro quo. Whether there's a meaningful difference between the two formulations in practice, I'm not really sure. I think there is because I do think if a reasonable jury could have used circumstantial evidence to find an explicit quid pro quo, which I think is the government's argument here, then that would be enough and we'd have to defer because it's usually a deferential standard under a sufficiency test. It's deferential for sure, but you're actually looking at the facts and you have to make a determination about it. We're not saying you can't consider circumstantial evidence. Again, I really wanna focus on what is the factual record here and can it support the inference that it needs to support in order to justify conviction under McCormick? And I really would like to, if I could read just one sentence from the Solicitor General's brief in McCormick because I found it in preparing for argument. I thought it stated the test really well and in a way that hopefully will elucidate what the inquiry needs to be. This is what the government said in McCormick. They said a campaign contribution is subject to prosecution. Now I'm quoting, only where the connection between the contribution and the candidate's official acts is clearly conditional. A candidate is of course free to point out to potential campaign contributors that he favors their position on an important issue and to advise them that a contribution to his campaign is therefore in their best interest. But a candidate cannot sell his vote by stating explicitly that his position on a particular issue will depend on whether he receives a suitable campaign contribution. I think that's what explicit quid pro quo means. It means the candidate, the official has to convey in a clear way that his actions will depend on whether he receives a campaign contribution. Why isn't that the statement that the district court relied upon which was this, hey Chen, like, love you, but can't. Why isn't that enough circumstantial evidence to meet that standard? Well, your honor, I think the most telling thing about that statement perhaps is that when the FBI heard that statement, what they told the agents was, oh, okay, now go back and be clear and unambiguous in your offer to see if there's something there. That's at 5709 of the record, which I think tells us they recognized that didn't satisfy the standard. It wasn't clear and unambiguous. It was maybe something that sparked their interest. But why couldn't a jury consider that statement in addition to what happened later and piece it together as circumstantial evidence? Well, I think we do have to look at what happened later because I think that's what the FBI recognized. Let's see if he bites because you could read it different ways. It's unclear exactly what he's saying by that statement. Is it a sort of veiled threat or not? Let's go back and let's ask him, hey, we're going to give you some money, but we want to make sure you for sure vote yes on this bill if we give you the money. And he said, this is on the November 2nd call when the agent is following the FBI's directions, and he says immediately, well, no, I can't do that. We can't have a quid pro quo. That's illegal. What I can tell you is about what my positions are, how I've always voted for every development project I've seen in my seven years on the council. And we can sit down and talk about your project and we can see where I am on it. That's exactly the appropriate thing to say, and he was making clear in those conversations, my vote is not going to depend on whether you give me money or not. My vote will depend on my policy views. And if we end up on the same page, of course you're going to want to support me to make sure that our shared priorities are advanced. And I think it's- Sittenfeld's view of what he meant when he said, hey, Chen, like, love you, but- Oh, so what he testified, and what I think is actually the best reading of that statement in context, because remember that phone call, October 30th phone call, there's no discussion of Elm on that call at all. It's purely a fundraising call. So what he said was, what he explained was, he was saying, look, I have things I need to do to be a successful candidate. He says that on the call. Meaning I've got to raise money so that I can be in a position to win. You don't want me to be in a position where I can't help you because I lose the race. It's like, you know, I get fundraising solicitations all the time from candidates and public officials who will say things like, we need to fight such and such, but I can't do it without your help. Click here to donate to my campaign. They're not threatening that if I don't click and donate, they're not going to fight whatever it is. They're saying, if you agree with me, you want to put me in a position where I can do what we both want me to do, which is fight whatever's at issue. This is where I'm somewhat confused by your argument because suppose, just assume that that is one perfectly reasonable reading. Assume the more nefarious reading is also reasonable. I think under your test, you would say that's not enough. But under traditional sufficiency of the evidence, where a statement can be interpreted in different ways, I think we would generally defer to the jury's conclusion or at least defer to the verdict. And so read that evidence in the light most favorable to the government. So it seems to me, it's hard for me to say that you're not actually asking us to change the traditional rules, 29 rules. Okay, I want to say a couple of things about the rule 29 standard. But first I want to say, even under the ordinary approach, we still have to ask, could a jury have found that this was clear and unambiguous? And I don't think that statement, standing alone in that context where they're not discussing any project, it's purely a fundraising solicitation, that vague comment can be enough for a jury to say, yes, this was a clear and unambiguous statement that he's only gonna support the project if they pay up, particularly given what follows, where he makes clear that's not at all how he's going about analyzing this issue. And I want to talk about the November 7th. But so under your view, the legal standard is there's a clear and unambiguous quid pro quo. And so wouldn't we interpret that statement in the light most favorable to the government and then combine it with all the other evidence that the government relies on and then ask if all of this evidence together collectively, would it be enough to show a clear and unambiguous? So that is what. I agree, that's the question. I think the answer is no. And I think actually their case, I can understand why they heard that statement and said, oh, maybe there's something here we should be investigating. Maybe we should send them back and see if there's something more here. I get that. But their case goes completely downhill after that because then they offer him the specific, the quid pro quo and he says, no, that's not how this works. Then they meet for lunch. And this is where the government says the actual quid pro quo happened. Because remember, they're actually downplaying love you but can't now on appeal because they sort of have a constructive amendment issue if they focus too much on that statement. So they say, oh no, no, November 7th is when it really happened. Well, what happened on November 7th? They sit down for lunch and PG says, so tell me about the project. And he goes on to ask and interrogate the agents and the duque about all the facets of what they're doing. What are you gonna build? How much money is it gonna be? How much, you know, it's a hotel. How many floors is the hotel gonna be? Who's the architect? What do you need from the city? Do you need financing, you know, special terms? He's asking all the right questions about the project and he's getting all the right answers because they're setting it up so that he can't do anything other than say, which is what he does say, well, this is an easy, this is a no-brainer. Of course I'll be supporting that. You're saying you have a great architect, $75 million project, IHG hotels committed to buy, retail with a letter of intent to rent out the space. You don't need any money from the city. You want the standard terms. Just so, it seems to me the problem there eventually is the, I mean, he's supportive, but arguably he promises that he's going to deliver the votes, which is I control council. I've got a veto-proof majority. The mayor is against this project. In exchange for $20,000, I will ensure that you have a veto-proof majority on 435 Elm. Not saying you're agreeing with me, but that's the government's argument, right? Why couldn't the jury conclude, yes, that was the bargain? I think it's important when you're considering the government's argument to read the transcripts actually cover to cover, because I think what they do is they're picking out a few sentences here, a few words from 10 pages later, and stringing it together to make it something that it's not. If you look at the transcript, what he says before anyone talks about money at all at this lunch, he says, if it's what you've described, this is easy. I'll be supportive. I'll be able to get my colleagues to be supportive. This is not a hard call. Even the mayor will be supportive. Even if he doesn't like the Duke way, the mayor's not going to get in the way of this. It's a slam dunk. No discussion of money until much later on, after he's firmly committed to do all of this, then they have small talk for half an hour. And at the end of the lunch, he says, now, would it be okay if I show you some slides on why I think I'm going to be the next mayor, and so if you want to support somebody in the race, you should support me. And he shows them a PowerPoint slides on why he's the best candidate. The idea that they had reached some sort of illicit trade for money and then he's pulling out PowerPoint slides half an hour later to make a pitch just doesn't make any sense. He had already committed to this on the merits and without any discussion that it was conditional in any way. And if we let juries sort of take a look at this very traditional routine sort of interaction. I mean, this is kind of the classic, well, like past consideration is no consideration issue. Like, okay, he's already committed to this project. He's already committed. I'm not sure he's committed. I mean, the veto discussion takes place after. And I'm not sure why a rational juror couldn't conclude that all of these players going into all of this discussion, if it's the love you but can't, they know the guy, let's say the guy's vindictive. We're scared. Okay, fine, he seems to be on board. He's telling us he's on board, but if we don't write these checks, he doesn't have to be on board. He doesn't have to deliver the votes. He could say, I'm not supportive. I mean, I don't know why. Putting it all together, it's a story. And I suppose your challenge is to say that's just essentially not a plausible story or not a story that can work under Jackson. Well, it's really about McCormick also. And I think what Your Honor is suggesting, it reminds me a lot actually of Justice Stevens' dissent in McCormick. Justice Stevens in dissent said, he talks about the facts and he's telling the story and he says, the representative of the lobbyist, the jury could have interpreted this as an implied threat to take no action on the legislation unless he received a payment. It doesn't need to be explicit. He was saying, look, you can put it all together that the jury can make the call. This was a sort of veiled threat. Court didn't accept that as sufficient. And I think there's a good reason why the court didn't accept that as sufficient. Because if you allow that sort of inference in a case involving campaign contributions, right? We have, oh, well, he made a contribution. He supported him. They talked. Maybe there's something circumstantial around the edges that looks a little fishy. There is not a single official in this country who could not be prosecuted by any half-decent team of AUSAs. Why shouldn't the test be, so quid pro quo, the pro, you made a large discussion about how he would have taken the action anyway because he's already committed to this once they told him all the great terms. Why shouldn't there be essentially a but-for-cause test? Meaning you have to show that he would not have taken the action but for the money. But you didn't advocate for that theory, I don't think. Your Honor, I don't think there's any way the government could satisfy that test here. Yeah, but the jury instructions affirmatively disavowed the test. They said something to the effect of, it's not a defense to bribery, that the public official would have done the official act anyway. OK, so yeah, this is important. Let me try to clarify this. It is correct, and the instructions are correct on this point, that if I'm an official and I say, if you pay up, I'll make sure to vote for your project. And the person pays up. I can't then come to court and say, well, I didn't mean it. I was going to do it anyway. It was just a way to, it didn't actually change how I acted. That's not a defense. But that's not a defense, because you've induced the payment using this conditional power. You've led the person to believe that it was going to be conditional on getting a contribution. So that's still a bribe. That's totally different, though, from a situation where he's saying, let me ask you about the project. Sounds great. This will be a slam dunk. And of course, it's completely consistent with his entire career and political persona as a pro-development candidate whose main objective is revitalizing the downtown core. In that situation, he's not misleading anybody. He's not suggesting that his support is going to be conditional, let alone clearly suggesting, which again, the government's own tests for McCormick. So I think that is a sort of subtle nuance about the law that's important here. And we're making the latter argument, not the former argument. Can I ask a question about the constructive amendment?  Because I think that's a serious question in this case. Standard of review. I think it's probably plain error, but I'm going to give you a chance to tell me it's not. Well, this court has said, if the district court passes on the merits of the issue, there can be no forfeiture. And we raised this issue in the post-trial motions, and Judge Cole ruled on it on the merits. He did not say it was plain error. He did not say it was waived or forfeited. So I know some of those cases. I probably have written a couple. You did. But it's a post-trial motion. I mean, the whole point of the forfeiture waiver is that the judge can correct the problem at the time. And at the time here would have been when the case went to the jury, not in a post-trial motion. So I'm not sure. I mean, I hear you, but I'm not sure that that distinction doesn't take care of that here. Well, I think that's all. I mean, that's true in every forfeiture case or waiver case. The idea is, if you'd raised it timely, something could have been done about it earlier. And again, I think what the court has said, and it's not just this court. There's a Supreme Court precedent as well. If it's passed on, there's no reason for us not to review it on the merits. Well, yeah, I mean, we can review it on the merits. But I take it your argument would be it would satisfy plain error. We've also argued that it would satisfy plain error under Kuzmano. Clear that the Tewitt Clause actually means something. It's not just an example or illustrative. I think there's automatic prejudice. Yeah, and it actually, the one thing that's sort of notable about it here is it actually explains the verdict in a way that the government hasn't been able to do at all and hasn't tried to do. Because remember, there was a count one that was on a services fraud based on the same alleged scheme. And the jury acquitted on count one. But count one, because it was on a services fraud, required use of a wire. The wire was a call with Rob. So one way to actually reconcile this is, for count one, where it had to be with Rob, they said no for the other counts. They convicted because the government had sort of shifted its focus back to the love you but can't statement, which was never supposed to be the charge of defense here. OK, thank you, counsel. Thank you, your honors. May it please the court, Matt Singer for the United States. I think it's now clear that the defendant's position is that the governing standard is the Rule 29 standard and that the court must assess the evidence in the light most favorable to the government and affirm if any rational trier fact have found the element satisfied. Now, even my colleague's statements here suggest that not really following that standard. He references a November 7 statement that standing alone is not enough. But of course, the jury does not assess any piece of evidence standing alone. The jury assesses all the evidence in the full context and makes all reasonable inferences based on that evidence. He also cites the best reading of the love you but can't call. But of course, that's Mr. Sittenfeld's testimony that he's citing too. And the jury found Mr. Sittenfeld's testimony not credible. What is the evidence that his support for the project or his promise to deliver votes or whatever it is was conditional on the $20,000? Where is there evidence that if you don't do this, I will not support this project? The government's theory throughout the entire trial and repeated throughout closing arguments that the defendant knowingly received the bribe. And that's consistent with the jury instructions. It's consistent with what Evans states is meets the explicit quid pro standard in McCormick. So you say it wasn't really conditional. He just knew a jury could conclude that he knew that's why they were paying him? That's what the jury instructions say. And that's the law is set forth in Evans and in Blanford. The Second Circuit recently reversed the district court in Benjamin on that very theory that where a public official receives money and in receiving money knows that that payment is in return for a piece of official action. What if, so there are lots of candidates who run on specific acts. So after the Affordable Care Act in 2010, tons of candidates, I presume, said, I am a lock to vote to repeal the Affordable Care Act. And maybe those candidates sent emails to folks who wanted to see the Affordable Care Act repealed. And the email said, I am going to vote to repeal the Affordable Care Act. Please send me money so I can get elected to do so. Is it the government's position that that is a quid pro quo that would violate anything? Not at all, Your Honor. Why? I think Terry specifically is very clear that it all turns on whether there was an agreement. And the hypothetical that Your Honor is presenting is not presenting an agreement. It's a solicitation of money for an official act. But it's a policy position. And it's not directed specifically to any particular payer, unlike in this case. It's an email to thousands of people, to thousands of particular payers. So the reason I'm asking this hypo is because I agree with you that would seem quite problematic if the government tried to prosecute that. But I think that is Setonfield's position here. I was the pro-business city councilman. I have always voted for development. This was a development project. Therefore, I was a lock to vote for it. Send me money so I can become mayor. So why is that different than the first hypo? It's different, Your Honor, because on November 2nd, during a call with Mr. Nduguay, Mr. Setonfield knew that the investors in this case, Rob, was prepared to give $20,000 and $10,000 at the meeting that they were scheduled to meet on November 7th. And in return, he's going to want yes votes without a doubt. This was an express quid pro quo. But in that same call, Setonfield said nothing can be quid pro quo. So he's disclaiming the quid pro quo offer in that call, isn't he? That was Mr. Setonfield's position at trial. Well, that's all the evidence we have of what he said. Well, the evidence is that the conversation followed, though. He said nothing can be a quid pro quo. And I know that's not what you're saying either. But that's exactly what Mr. Nduguay said. He went on to say that you can tell them that I'm a pro-development person, or candidate, or council member. I've never met a, it's like the Will Rogers of meeting development projects. He's never met a development project he doesn't like. I mean, that was basically what he was saying, wasn't it? A reasonable jury could have taken that position, which was the defendant's position at trial. The reasonable jury could have rejected that position and found that what he was actually doing was saying, yeah, I understand that you're offering me a quid for a quo. And nothing can be a quid pro quo, but let's talk about it in person. But let me just tell you that I can guarantee you the quo when we talk about it in person. And I'm prepared to give these individuals. What's troubling, it seems like these are ships passing in the night. You don't really have mutuality of consent, do you? You have one side who's arguing that we're giving you the money for this quid pro quo. And the other side is saying, I'm just pro-development. I'm going to green light development here. So do you really have enough evidence to show mutuality here of an agreement? To be clear, the government never argued that the call on November 2nd satisfied any of the elements of the crime. There were circumstantial evidence. And what they did was show that Mr. Sittenfeld knew that when he stepped into that meeting on November 7th, that Rob, the bride pair, was prepared to offer $20,000. And he'd have $10,000 in tow. And he's going to want yes votes in return. That's what he knew when he walked in the door on November 7th. And then when they entered that private condo in a recorded meeting, Rob offered, I've got $20,000. I want yes votes on 435. I've got $10,000 with me right now. The exact same expressed quid pro quo that Mr. Sittenfeld was offered five days before. So he knew he was going to get the quid pro quo. He got the quid pro quo. And when he was in a private condo, he promised to deliver the votes. The government's position at trial. It's not that clear, though. I mean, it's not anywhere as clear as you're making out to be. They seem to be talking past each other at various times, just like Judge Bush is saying. There isn't a, I mean, I don't know. Yes, I mean, I think for you, you just have to kind of, a jury could maybe piece it together and conclude, if a rational juror could kind of piece it together, that everybody understood that I'm getting 20K to deliver the votes, then I take it that would be enough. But I don't know that it's, I don't know how clear it is. I don't think it's expressed or explicit or whatever the words are that we're looking for. Certainly a reasonable jury could find that Mr. Sittenfeld knew he was going to be offered $20,000 for votes. And when he made that offer, he promised to deliver the votes. And then immediately, within seconds, after promising to deliver the votes, began negotiating how he could receive that same $20,000. It does seem to me, by the way, that you've, that the government, on appeal at least, has run away a little bit from the love you but can't call. And I'm curious about why. It seemed like it was a major feature of your closing. And I don't know, is that because of the constructive amendment problem? Do you think that's not a problem? It's not, Your Honor. So you agree that they could have convicted solely based on the love you but can't call, right? Because you say you can convict either from the 20K or from this call. That was the solicitation, right? So what's your argument, that he was soliciting to rob and not in Duke way on that call? To be clear, the government is not running away from the love you but can't. The way the government argued the love you but can't call at trial, and consistent with the jury instructions, was that that was a corrupt solicitation. So that would have satisfied a means for the element relating to count three. The love you but can't on its own would not satisfy the elements for count four, which required agreeing to accept or accepting contributions knowing they were in return for official actions. Now, the love you but can't was evidence that the jury could consider for the whole story. The district judge thought that love you but can't was the key evidence on both accounts of conviction, right? Was he wrong about that? Well, I think what the district court was saying is that the love you but can't certainly showed his corrupt intent. And that, I think two sentences later, said that was backed up by the explicit quid pro quo that was ultimately agreed to when the defendant agreed to shepherd the votes in return for contributions. So the love you but can't is sufficient to affirm as to count three, but not sufficient to affirm as to count four, because the count four required the acceptance or agreement to accept in return for official action. OK, so then what do we do with the fact that the indictment in counts three and four doesn't mention Ndukwe at all? It's all about Rob and Rob making a contribution or whatever. Why isn't that a constructive amendment? The indictment specifically mentions Mr. Ndukwe and, in fact, characterizes. No, but not in the counts of conviction, right? Not in the two wit clauses of the relevant counts. It's not specifically in the two wit clause, but those paragraphs are part of that count. You're talking about, you mean, the incorporation by reference?  But haven't we said that the two wit clauses narrow the indictment? That's what Cusimano says specifically, right? Cusimano did not deal with a situation where there were allegations in the indictment that were then incorporated, and then comparing that to what the two wit clause said. In Cusimano, there was no reference at all to the type of extortion that, ultimately, the jury was instructed on. Here, the very- But in Cusimano, it says two wit economic loss, and then they use threats or whatever, right? And you're saying, well, if they had mentioned threats someplace else in the indictment, that would have been OK? I think this court's precedent and, of course, some other circuits would be clear that where there are other allegations in the indictment that are incorporated into that count, then the count should be read as if those allegations are part of the count, which is what happened here. I don't think there's any way to read even the two wit clause out of context of all the other allegations relating to the solicitation. And in fact, the solicitations at issue, the October 30th call, under a subheading, 2018 solicitations, are the only solicitations that are even referenced in the indictment. So when the two wit clause references solicitations, it has to be read in the context of all of the allegations, which shows that the October 30th. I mean, I don't know whether I agree with that or not. I mean, the two wit clause is a very specific thing in the indictment. It says exactly what the defendant is going to be on the hook for. And I don't know, and it doesn't say confidential informant or soliciting the confidential informant. So if I'm looking at that and I'm saying, what am I going to be criminally liable for here? It's this guy paying me or soliciting me. Why do I have to piece it together using other parts of the indictment? You should be clear in the indictment that this is what I'm on the hook for. I don't think it's piecing together, Your Honor. I think it's all part of the same charge. And the two wit clause, I think the indictment, this law is clear that the indictment should be read broadly and in a non-technical manner, and that the two wit clause should be read to comport with the allegations that are otherwise there. And there's not a single case cited anywhere in the briefs where a court has found that the two wit clause negates or excises allegations that were otherwise in the indictment. Do you agree it's plain error review of the instructions? I do, Your Honor. The defendant never objected to the solicitation when it was presented into evidence. The defendant never objected in closing where the government characterized it as a corrupt solicitation. Why is that the duty? Why isn't it enough just to object post-trial? There's not a lot of case law in our circuit on how you preserve a constructive amendment claim. Your Honor, I think the reason for the plain error standard is so that the district court can address the error in the first instance to prevent it from becoming an error. And by waiting post-trial after it's been resolved, the error, to the extent there was one, has been committed. And I think it's telling that when the district court resolved the jury instruction, which the defendant now claims is what preserved his objection, the district court reviewed that under plain error. I agree with that. Why do you think the district court didn't review under plain error the constructive amendment claim? I think the district court was satisfied that there was no error at all. And there was no need to delve into the plain error standard. He said it was clear that the argument fails on both the facts and the law. What's your response to the kind of generic rule that if the court decides something essentially de novo, then any forfeiture is itself forfeited and we can review it de novo? I just think that's a misreading of what the law is, I think. In the defendant's reply brief, United States v. Boyd, at page 19 of the reply, the court said that when a defendant raises an argument after trial, we review for plain error. And I think the reason is because the district court was not able to engage in any meaningful review in real time when it mattered. And district courts routinely review in post-trial motions issues for plain error when they weren't presented in a timely fashion. I see my time is up. If there are any other questions? No further questions. Thank you. Thank you. The government simply asked that this court affirm. Thank you. Your Honors, I think it's pretty clear that based on that discussion that on the government's test, there is no limit on who can be prosecuted for bribery based on campaign contributions. The way I understand his argument, PG knew that this guy wanted him to vote and was willing to contribute on that basis. PG went ahead and said, I'm going to support the project. And PG took the money. And they say, jury can then put that all together and infer corrupt intent. And we're done. If that's enough, there is nothing left of McCormick. Because every official who accepts a campaign contribution knows what the donor is looking for. When the senator walks into the NRA lunch, or the oil and gas fundraiser, or the Chamber of Commerce dinner, or what have you, he knows exactly what they're interested in, what their priorities are. And he stands up and says, I'm going to fight for this. I'm going to oppose that. And then they all take out their checkbooks. And if that's enough for a jury to look at it and say, well, we think this is corrupt. And by the way, they almost always will. We know that from the law professor's amicus brief that talks about the empirical research. The juries think the whole system is corrupt. Is it your position there's a different standard for campaign contribution cases versus other payments to public officials? Yes. I think the standard is different. I think the McCormick explicit requirement is designed for campaign contribution cases only. But whether you think of it as a different legal standard. That means you disavow Justice Kennedy's concurrence. And is it Evans where he said it was the same test? No, he was saying there's a quid pro quo requirement across all cases, which I think is correct. And that was still up in the air at that time. But Justice Kennedy's concurrence, by the way, makes very clear that the relevant question is did the official lead the donor to believe that his support would be conditional on the donation? He uses the same formulation that we saw from the government's brief in McCormick. And that is designed for a campaign contribution setting. Because with other types of things of value that are not constitutionally protected, that are not politically routine, it's much easier to draw an inference that something fishy is going on, something illegal is happening. Because it's not typical. The whole point about McCormick and campaign contributions is this happens every day across the country. If we allow a jury to infer a crime from that alone, we have a big problem. So it needs to be a much higher bar. That's where the explicitness and the conditional comes into the analysis. May I just make one request, Your Honors? It's not an argument. But PG has already started his sentence. So I hope I've convinced you the conviction is wrongful. If I have convinced you, I would ask the court to either consider an order in advance of opinion or granting release pending appeal. Because it's a short sentence, and he's already served over a quarter of it. Thank you, counsel. We will take the matter under submission.